**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

DARRELL HARLOW,

                            Plaintiff,

       v.                                              9:18-CV-0648
                                                                   (LEK/DJS)

SGT. ST. ANDREWS, *et al.*,

                            Defendants.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| DARRELL HARLOW<br>18-B-1614<br>Plaintiff, *pro se*<br>Cayuga Correctional Facility<br>P.O. Box 1186<br>Moravia, New York 13118 | |
| HON. ROBERT A. DURR<br>Onondaga County Attorney<br>Attorney for Defendants<br>Onondaga County Department of Law<br>421 Montgomery St., 10th Floor<br>Syracuse, NY 13202 | JOHN E. HEISLER, JR., ESQ.<br>YVETTE VELASCO, ESQ.<br>Assistant County Attorney |

**DANIEL J. STEWART
United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at the Onondaga County Justice Center.  Dkt. No. 19, Sec. Am. Compl.  Following initial review under 28 U.S.C. §§ 1915(e) & 1915A, this case has proceeded with four distinct claims: 1) Fourteenth

Amendment excessive force and failure to protect claims against numerous Defendants arising out of an incident on March 10, 2016; (2) Fourth Amendment invasion of privacy claims, also against multiple Defendants, arising out of the March 10, 2016 incident; (3) Fourteenth Amendment conditions of confinement claims asserted against Defendants St. Andrews and Williams arising out of the conditions of Cell 10 in the 5C Pod; and (4) Fourteenth Amendment claims asserted against Defendants Burton, Sarno, and Phillips arising out of the conditions of Cell 27.   Dkt. No. 12 at p. 26.

Presently pending is Defendants' Motion for Summary Judgment pursuant to FED. R. CIV. P. 56.   Dkt. No. 50.[1]   Plaintiff opposes the Motion, Dkt No. 62, and Defendants have filed a Reply.   Dkt. No. 64.   For the reasons set forth below, the Court recommends that the Motion for Summary Judgment be granted in part and denied in part.

## I. BACKGROUND

On March 10, 2016, Plaintiff was brought to the Onondaga County Justice Center to be booked on criminal charges lodged against him and processed into custody.   Dkt. No. 50-2.   Plaintiff alleges that during the booking process he was assaulted by those correctional staff named as Defendants.   Sec. Am. Compl. at p. 6; Dkt. No. 62, Pl.'s Mem. of Law at pp. 2-3.   Defendants counter that while force was used, it was necessary to stop a suicide attempt by Plaintiff.   Dkt. No. 50-12, Defs.' Mem. of Law at pp. 6-8.

---

[1] Defendants' motion papers treat Onondaga County as a Defendant, Dkt. No. 50-11 at ¶ 2; Dkt. No. 50-12 at pp. 4-5, but the County was previously dismissed from this action.  Dkt. No. 12.  Questions regarding its' potential liability, therefore, are not addressed in this opinion.

2

Plaintiff expressly denies that he attempted suicide on March 10th. Pl.'s Mem. of Law at p. 17. It is undisputed that Plaintiff was eventually moved from a booking cell to a separate cell after being physically restrained while naked. Dkt. No. 50-3, SERT Video. This movement of Plaintiff is the basis of his right to privacy claim. Pl.'s Mem. of Law at pp. 9-13.

Plaintiff was subsequently moved within the facility multiple times. Dkt. No. 50-10. Plaintiff's conditions of confinement claims relate to alleged unsafe conditions in two of cells to which he was moved. He alleges first that cell 10 in Pod 5C was covered in feces, vomit, blood, spoiled food, and fruit flies. Sec. Am. Compl. at p. 8. He claims he was later moved to cell 42 and for a period of just under three days while housed in that cell the heat was turned up to over ninety degrees. *Id.* at p. 9. There is no dispute that he was housed in these cells. Dkt. No. 50-10.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

3

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court

4

must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

#### A. Statute of Limitations

Defendants assert that Plaintiff's claims are untimely, as Plaintiff failed to serve a notice of claim or commence the present action within the one-year-ninety-day statute of limitations governing tort claims against municipal defendants as set forth in N.Y. Gen. Mun. Law § 50-i. Defs.' Mem. of Law at pp. 15-18. To the contrary, Plaintiff contends that since he alleges violations of his federal constitutional rights, his claims should be governed by a three-year statute of limitations and are thus timely. Pl.'s Mem. of Law at p. 20. Under well-established law governing section 1983 claims Defendants' argument is wholly without merit.

Since Congress did not enact a statute of limitations governing § 1983 claims, courts must apply the state statute of limitations that is "most analogous[.]" *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994) (quoting *Board of Regents v. Tomanio*, 446 U.S. 478, 488 (1980)). However, the courts' attempts to discern which statutes of

limitations were most analogous to various types of § 1983 claims "led to uncertainty, confusion, and lack of uniformity." *Id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 272 n.25 (1985) and *Owens v. Okure*, 488 U.S. 235, 240 (1989)). Thus, in pursuit of "the federal interests in uniformity, certainty, and the minimization of unnecessary litigation[,]" the Supreme Court has directed courts to "select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Wilson v. Garcia*, 471 U.S. 261, 275 (1985). Since "§ 1983 claims are best characterized as personal injury actions," a state's personal-injury statute of limitations should be applied to all § 1983 claims. *Id.* at 280; *see also Lounsbury v. Jeffries*, 25 F.3d at 133.

Expounding upon these principles, in *Owens v. Okure*, the Supreme Court held that where, as in New York, "state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." 488 U.S. 235, 249-50 (1989). The *Owens* Court concluded that the plaintiff's claims against State University of New York police officers were properly governed by New York's three-year residual statute of limitations for personal injury claims not covered by specific statutes of limitations, N.Y. C.P.L.R. § 214(5), rather than the State's one-year statute of limitations governing claims alleging eight intentional torts, N.Y. C.P.L.R. § 215(3) (McKinney 1972). *Id.* at 237-38, 251.

Defendants' statute of limitations argument appears to derive almost entirely from the decision in *Tanner v. Humphries*. Def. Mem. of Law at pp. 15-18 (citing 2019 WL

6


2232930, at * 2-3 (N.D.N.Y. May 23, 2019). There, the court dismissed the plaintiff's claim against a village police officer as untimely under § 50-i. *Tanner v. Humphries*, 2019 WL 2232930 at *4. However, the court in that case applied the statute of limitations set forth in § 50-i to the plaintiff's state law claim that his rights under the New York Constitution had been violated, *not* a claim under section 1983. *Id.* at *1-4. Lower courts that have applied *Wilson* and *Owens* to the specific issue at bar have held that N.Y. Gen. Mun. Law § 50-i is inapplicable to § 1983 actions. *See, e.g.*, *Meiselman v. Richardson*, 743 F. Supp. 143, 147 (E.D.N.Y. 1990) (rejecting N.Y. Gen. Mun. Law § 50-i in favor of N.Y. C.P.L.R. § 214(5) in part because such an approach is in accord with the underlying rationale of *Wilson* and *Owens*). Therefore, *Tanner* is inapplicable where, as here, the plaintiff alleges violations of his federal constitutional rights.

Applying the aforementioned case law, the Court concludes that the three-year statute of limitations set forth in N.Y. C.P.L.R. § 214(5) governs Plaintiff's claims against the county defendants. Section 214(5) is a "general" statute in that it "applies to all personal injury actions with certain specific exceptions." *Owens v. Okure*, 488 U.S. at 246; *see also* N.Y. C.P.L.R. § 214(5). Moreover, application of § 214(5) rather than N.Y. Gen. Mun. Law § 50-i "avoids subjecting plaintiffs to differing limitations periods depending on the identity of the defendant." *Meiselman v. Richardson*, 743 F. Supp. at 147. This approach furthers "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation" and is consistent with the Supreme Court's

interpretation of § 1983, which is intended to provide a broad federal remedy for plaintiffs. *Wilson v. Garcia*, 471 U.S. at 272, 275.

Plaintiff's alleged civil rights violations took place between the dates of March 10, 2016 and March 25, 2016. Sec. Am. Comp. at pp. 6-10. Plaintiff commenced this action on or about June 4, 2018, well within the three-year statute of limitations.

### B. Plaintiff's March 10th Excessive Force Claim

On the merits, the Court recommends that summary judgment be denied as to Plaintiff's excessive force claim. "Excessive force claims frequently involve factual disputes that make them difficult to resolve pursuant to summary judgment." *Savage v. Acquino*, 2018 WL 1478254, at *7 (W.D.N.Y. Mar. 23, 2018). This case is no different.

At the time of the alleged assault, Plaintiff was a pretrial detainee and therefore Plaintiff's excessive force claim arises under the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 21 (2d Cir. 2017). In *Kingsley v. Hendrickson*, the Supreme Court addressed the proper standard for evaluating excessive force claims brought under the Fourteenth Amendment by a pretrial detainee and concluded that "courts must use an objective standard" under which the plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." 135 S. Ct. 2466, 2472-73 (2015). As a result "*Kingsley* provides the appropriate standard for all excessive force claims brought under the Fourteenth Amendment." *Id.* Assessing the objective reasonableness of any use of force necessarily depends on the facts and circumstances of

each case, but relevant factors include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 135 S. Ct. at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989) ). "Thus, a pretrial detainee can make a showing if the force . . . is not rationally related to a legitimate governmental purpose or that it is excessive in relation to that purpose.'" *Parson v. Barboza*, 2016 WL 7261550, at *5 (N.D.N.Y. June 28, 2016), *report and recommendation adopted*, 2016 WL 4398522 (N.D.N.Y. Aug. 18, 2016) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. at 2473).

The record before the Court is insufficient to recommend dismissing Plaintiff's excessive force case on the present Motion. No party has submitted an affidavit laying out what occurred in Plaintiff's booking cell. Defendants maintain that they intervened to avert a suicide attempt by Plaintiff. In support of their Motion they offer facility incident reports, which are sworn under penalty of perjury, and use of force reports, which are not sworn to. *See* Dkt. Nos. 50-5 & 50-7. To the extent that the sworn-to reports may be relied on in support of summary judgment, they are insufficient to carry Defendants' burden on this Motion. Defendant Feldman, for example, stated that he observed Plaintiff attempting suicide, called for assistance, and Plaintiff was eventually moved to another cell. Dkt. No. 50-5 at p. 2. Defendant Mazzoni's incident report

9

indicates that he was part of the initial response to Plaintiff's cell and that upon entering the cell Plaintiff "immediately complied" with direction and was handcuffed. *Id.* at p. 6. Defendant McCarthy's report states that "Harlow placed himself on the floor" and was handcuffed. *Id.* at p. 7. These reports suggest that other than the use of handcuffs no other force was initially used which contrasts starkly with Plaintiff's allegations that he did not attempt suicide on the day in question and that facility staff came into his cell and used force for no reason. Pl.'s Mem. of Law at pp. 14-17. The reports also do not explain why it was then necessary to further restrain Plaintiff.

Defendants provide two videos from the facility as evidence in support of the Motion, but neither is sufficient to establish their entitlement to judgment as a matter of law. The booking video is from a hallway camera and does not show the interior of the booking cell where the incident took place. Dkt. No. 50-4, Booking Video. Officers are seen responding to Plaintiff's cell but the initial encounter inside the cell is not visible. Consistent with the version of events relayed by all parties, the video does show Plaintiff's clothes being thrown from the cell. *Id.* Members of a jail SERT team then arrived to secure Plaintiff and remove him to another cell. Much, but not all, of their interaction with Plaintiff is recorded on the SERT video. SERT Video. The video shows that Plaintiff is physically restrained with multiple straps while naked. *Id.* Plaintiff can be heard verbally berating facility staff in the video. *Id.*

There is no doubt that some level of force was used against Plaintiff on the date in

question. Insufficient evidence has been offered to establish that the force used was reasonable. The parties dispute the factual premise upon which the force was allegedly necessary - whether Plaintiff was attempting suicide. Reasonable force used to prevent an inmate from committing suicide undoubtedly would not violate the Constitution. *See Roach v. Okun*, 2017 WL 3638464, at *5 (N.D.N.Y. June 6, 2017), *report and recommendation adopted*, 2017 WL 3638197 (N.D.N.Y. Aug. 23, 2017) (use of pepper spray found objectively reasonable where detainee was suicidal and threatened to harm himself). Here, however, summary judgment is inappropriate when there is a question of fact as to whether a suicide attempt was underway, there is little evidence about the exact amount of force used, and whether any effort made by staff to temper or to limit the amount of force. This case "presents quintessential fact questions that cannot be resolved on summary judgment." *McGinnis v. Crissell*, 2018 WL 4635707, at *4 (N.D.N.Y. Apr. 18, 2018), *report and recommendation adopted*, 2018 WL 3970668 (N.D.N.Y. Aug. 20, 2018).[2] For this reason, Defendants' Motion for Summary Judgment should be denied as the excessive force and failure to intervene claims.

### C. Conditions of Confinement Claim

"A pretrial detainee's claims of unconstitutional conditions of confinement are

---

[2] The same factual questions that preclude summary judgment on the merits of this claim preclude granting summary judgment based on qualified immunity since the right to be free from excessive force is clearly established. *Thomas v. Roach*, 165 F. 3d 137, 143 (2d Cir. 1999) ("summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."); *Kavanaugh v. Vill. of Green Island*, 2018 WL 1033288, at *6 (N.D.N.Y. Feb. 22, 2018); *Swift v. Mauro*, 2008 WL 207793, at *7 (N.D.N.Y. Jan. 24, 2008).

11

governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d at 29.

> In order to state a section 1983 claim based on unconstitutional conditions of confinement, a pretrial detainee must satisfy a two pronged test: an objective prong, showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a subjective prong perhaps better classified as a *mens rea* prong or mental element prong showing that the officer acted with at least deliberate indifference to the challenged conditions."

*Pittman v. Billings*, 2020 WL 2079440, at *5 (N.D.N.Y. Apr. 30, 2020), *report and recommendation adopted sub nom. Pittman v. SGT/INV Stacey Billings*, 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (quoting *Darnell v. Pineiro*, 849 F.3d at 29) (internal quotations omitted).

Plaintiff alleges that Defendant St. Andrew moved him to cell 10 in Pod 5C and that the cell "had feces, vomit, spoiled food, fruit flies[,] and blood on the walls and floor." Sec. Am. Compl. at p. 8. He further alleges that Defendant Williams knew of these "inhumane conditions" but did nothing remedy the situation. *Id.* Facility records indicate that Plaintiff was moved to cell 10 on March 11, 2016 and moved to a new cell on March 14th. Dkt. No. 50-10. Defendant St. Andrew's Affidavit denies observing any of the conditions alleged by Plaintiff. St. Andrew Aff. at ¶ 6. Defendant Williams offers no affidavit regarding his knowledge of the condition of cell 10.

Plaintiff's opposition papers do not specifically address St. Andrew's denial that

12

*he* observed the cell in the condition Plaintiff alleges or offer any evidence supporting his claim regarding the condition of his cell. In the absence of such evidence, St. Andrew's sworn statement denying the condition was in the cell alleged belies any claim of deliberate indifference on his part and it is recommended that St. Andrew be granted summary judgment as to this claim.

Defendant Williams is also alleged to have known of unsanitary conditions in cell 10, but failed to act. Sec. Am. Compl. at p. 8. Williams offers nothing on this Motion to deny these allegations. St. Andrew's Affidavit states nothing regarding what Williams may or may not have observed and so cannot aid Williams here. As such, Defendant Williams has not carried his initial burden of establishing that no material questions of fact exist that would entitle him to summary judgment. *Callwood v. City of Kingston*, 2020 WL 2838602, at *6 (N.D.N.Y. June 1, 2020), *reconsideration denied sub nom. Callwood v. Mills*, 2020 WL 3605628 (N.D.N.Y. July 2, 2020); *Howlan v. Hireright Sols., Inc.*, 2011 WL 2975515, at *4 (N.D.N.Y. July 21, 2011).[3]

Plaintiff also alleges that he was subjected to extreme heat when he was moved to a new cell. Sec. Am. Compl. at p. 9. Defendants Burton, Sarno, and Phillips are alleged to have had knowledge of this condition and failed to remedy it. *Id.* Plaintiff

---

[3] The Court also recommends finding that qualified immunity is not appropriate as to Defendant Williams. It was clearly established at the time of these allegations that Plaintiff had a constitutional right to prison living conditions that were safe and humane and did not deprive him of basic human needs. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Rhodes v. Chapman*, 452 U.S. 337 (1981).

13

specifically alleges that he was confined to the cell for three days with the temperature exceeding ninety degrees.  *Id.*[4]

Defendants concede that "exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment."  Defs.' Mem. of Law at p. 11 (citing cases).  They offer no evidence to refute Plaintiff's allegations that the temperature in his cell exceeded ninety degrees, arguing instead that Plaintiff's allegations should be dismissed as conclusory.  *Id.*  Despite Defendants' failure to offer evidence that call into question the truth of Plaintiff's allegations, the Court concludes that the allegations, even if true, do not as a matter of law rise to the level of constitutional violation and that summary judgment should be granted for Defendants as to this claim.

The Second Circuit has recognized that exposing an inmate to extreme temperatures for a "prolonged period" can give rise to a constitutional claim.  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).  Courts have consistently found, however, that allegations of such exposure for just a short time do not.  *Wingate v. Robert N. Davoren Ctr.*, 2013 WL 4856573, at * 3 (S.D.N.Y. Sept. 10, 2013) (citing cases); *Borges v. McGinnis*, 2007 WL 1232227, at *5 (W.D.N.Y. Apr. 26, 2007) (three days exposure of allegedly cold temperatures insufficient under Eighth Amendment).  Here, Plaintiff alleges a period of exposure of less than three days.  That period of time is insufficient to state a conditions of confinement claim and so the Court recommends that summary

---

[4] Facility records indicate that Plaintiff was in this cell longer than the three days he alleges, Dkt. No 50-10, but the Court addresses only the specific allegation in the Complaint of excessive heat for three days.

judgment be granted as to this claim.

### D. Fourth Amendment Privacy Claim

Plaintiff claims that his right to privacy was violated on March 10, 2016 when he was stripped naked and restrained while being moved to an observation cell. He objects, in particular, to the fact that several female members of the jail staff were present and able to observe him naked. Pl.'s Mem of Law at pp. 9-13

"[P]risoners retain a right to bodily privacy, even if that right is limited by institutional and security concerns." *Nicholas v. Goord*, 430 F.3d 652, 658 (2d Cir. 2005). This "right to privacy that may be implicated in connection with 'the involuntary viewing of private parts of the body by members of the opposite sex.'" *Richardson v. City of New York*, 2013 WL 2124176, at *2 (S.D.N.Y. Apr. 17, 2013) (quoting *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir.1980)). However, "[c]ases in this Circuit and elsewhere addressing inmates' privacy rights suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible, but that regular, close and frequent viewing is prohibited." *Urbano v. Murphy*, 2013 WL 6842939, at *3 (D. Conn. 2013). Defendants contend that their actions were necessary to address a suicide attempt, Defs.' Mem. of Law at pp. 11-14, but even accepting Plaintiff's contention that he had not attempted suicide, this single incident when he was observed naked by female staff during a brief transport, *see* SERT Video, is insufficient to state a claim. Accordingly, the Court recommends that summary judgment be granted as to this

claim.

## IV.   CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 50) be **GRANTED in part and DENIED in part**; and it is further

**RECOMMENDED**, that summary judgment be **GRANTED** as to Plaintiff's Fourth Amendment privacy claim and his Fourteenth Amendment conditions of confinement claims against Defendants St. Andrew, Sarno, Burton, and Phillips and the Motion be **DENIED** as to all other claims; and it is further

**RECOMMENDED**, that the Second Amended Complaint be **DISMISSED** as to Defendants St. Andrew and Phillips; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

---

[5] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  September 3, 2020
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

17