UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DARRELL HARLOW,

                    Plaintiff,

      -against-                         9:18-CV-0648 (LEK/DJS)

SERGEANT ST. ANDREWS, *et al.*,

                    Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.   INTRODUCTION

Plaintiff Darrell Harlow, currently incarcerated at the Attica Correctional Facility, brings this pro se action against Sergeant Benjamin St. Andrew,[1] Sergeant Robert Feldman, Deputy Shedrick Williams, Sergeant Corey Moore, Deputy David Mazzoni, Deputy Michael McCarty, Deputy Jordan Dodge, Lieutenant Edward Salvagni, Sergeant Amy Burton, Deputy Marc Sarno, Deputy Kevin Koebler, Deputy Christopher Cornish, Deputy Patrick Picciotto, and Deputy Codee Phillips, alleging violations arising out of his confinement as a pretrial detainee at the Onondaga County Justice Center. See Docket. Plaintiff commenced this action on June 4, 2018, Dkt. No. 1 ("Complaint"), and filed his application to proceed in forma pauperis ("IFP") the same day, Dkt. No. 2. Plaintiff later submitted an amended complaint adding new defendants. Dkt. No. 9 ("Amended Complaint"). Plaintiff was subsequently granted IFP status. Dkt. No. 12. Plaintiff submitted a second amended complaint on December 17, 2018. Dkt. No. 19 ("Second Amended Complaint"). Following initial review under 28 U.S.C. §§ 1915(e) and 1915A, this

_____

[1]  This defendant's last name is spelled alternatively as Andrews and Andrew throughout the docket. See Docket. This Court will refer to him as Andrew since that is how he spelled his name in his answer to the Amended Complaint. See Dkt. No. 21.

case has proceeded with four distinct claims: (1) Fourteenth Amendment excessive force and failure to protect claims against numerous defendants arising out of an incident on March 10, 2016; (2) Fourth Amendment invasion of privacy claims against multiple defendants arising out of a separate March 10, 2016 incident; (3) Fourteenth Amendment conditions of confinement claims against Andrew and Williams arising out of the conditions of Cell 10 in the 5C pod; and (4) Fourteenth Amendment claims against Burton, Sarno, and Phillips arising out of the conditions of Pod 5C, Cell 42. Dkt. No. 70 ("Report-Recommendation").

On October 16, 2019, Defendants filed a motion for summary judgment. Dkt. Nos. 50 ("Motion"), 50-11 ("Statement of Material Facts"), 50-12 ("Defendants' Memorandum of Law"), 50-2 to -10 (Exhibits). On December 9, 2019, Plaintiff filed a response opposing the motion. Dkt. Nos. 62 ("Plaintiff's Memorandum of Law"), 62-1 ("Response to Statement of Material Facts"). On September 3, 2020, the Honorable Daniel J. Stewart, United States Magistrate Judge, recommended that Defendants' summary judgment motion be granted for Plaintiff's Fourth Amendment privacy claims and Fourteenth Amendment conditions of confinement claims against Burton, Sarno, Phillips, and Andrew and denied for all other claims. See generally R. & R. Plaintiff timely filed objections to the Report-Recommendation. Dkt. No. 71 ("Objections").

## II.    BACKGROUND

### A.  The Second Amended Complaint and the Report-Recommendation

The following facts are detailed in the Report-Recommendation, familiarity with which is assumed. See R. & R. at 2–3. For convenience, the Court summarizes them here.

On March 10, 2016, Plaintiff was brought to the Onondaga County Justice Center to be booked on criminal charges. Id. at 2. During booking, Plaintiff alleges that he was assaulted by

2

Defendants. Id. at 2; Pl.'s Mem. of Law at 14–17. Defendants claim that while force was used, it was necessary to stop a suicide attempt by Plaintiff. R. & R. at 2 (citing Defs.' Mem. of Law at 6–8). Later that day, Plaintiff was moved from his booking cell to a separate cell after being physically restrained while naked. Id. at 3. There is no dispute that Plaintiff was moved after being physically restrained while naked. Id.; Statement of Material Facts at 3;  Resp. to Statement of Material Facts at 4–5.

Plaintiff was subsequently moved to different cells within the facility. R. & R. at 3. Plaintiff was placed in Pod 5C, Cell 10, which was covered in feces, vomit, blood, spoiled food, and fruit flies for four days. Id.; Pl.'s Mem. of Law at 3–4. Plaintiff was later moved to Pod 5C, Cell 42 for three days, where the temperature was over 90 degrees. R. & R. at 3; Pl.'s Mem. of Law at 4. There is no dispute that Plaintiff was housed in these cells, or that Cell 42 exceeded 90 degrees for three days. R. & R. at 3; Statement of Material Facts at 3; Defs.' Mem. of Law at 10–11. Defendants do, however, contest the condition of Cell 10. Defs.' Mem. of Law at 9–10; Mot. Ex. G.

**B.  The Report-Recommendation**

Judge Stewart first concluded that Plaintiff's constitutional claims were governed by a three-year statute of limitations and not a one-year-and-ninety-day statute of limitations governing tort claims against municipal defendants. R. & R. at 5. Thus, Plaintiff's claims were timely. Id.

Judge Stewart then recommended granting summary judgment to Defendants on Plaintiff's Fourth Amendment privacy claim because a single incident of being stripped naked and restrained briefly was not sufficient to state a bodily privacy claim. Id. at 15. Judge Stewart

also recommended granting summary judgment on Plaintiff's conditions of confinement claim against Andrew because Andrew denied observing the feces, vomit, blood, spoiled food, and fruit flies in Cell 10 of Pod 5C and Plaintiff did not allege that Andrew himself observed the cell conditions. Id. at 12–13. Lastly, Judge Stewart recommended granting summary judgment on Plaintiff's conditions of confinement claims against Burton, Sarno, and Phillips for the extreme heat in Cell 42 for three days because Plaintiff was not exposed to the extreme heat for a "prolonged period." Id. at 14.

Judge Stewart recommended denying summary judgment for Plaintiff's excessive force claim because there was an insufficient record from Defendants to dismiss the claim and recommended denying summary judgment for Plaintiff's conditions of confinement claim against Williams because he did not deny observing feces, vomit, blood, spoiled food, and fruit flies in Cell 10. Id. at 8–11, 13.

### C. Objections

Plaintiff objects to the grant of summary judgment as to his Fourth Amendment privacy claims and Fourteenth Amendment conditions of confinement claims. See generally Objs. For the privacy claim, Plaintiff argues that the distance between himself and female staff members should be considered, rather than just the amount of time he was naked while in transit to another cell. Objs. at 2–5. For the conditions of confinement claim against Andrew, Plaintiff argues that Andrew either knew or should have known that Cell 10 was covered in vomit, feces, and other filth. Objs. at 6.

For the conditions of confinement claims against Burton, Sarno, and Phillips in Cell 42, Plaintiff argues that his exposure to extreme heat for three days should be considered prolonged

4

under applicable case law. Objs. at 5. In addition to the time exposed, Plaintiff suggests that the

extremity of the conditions should be considered before granting summary judgment on his

confinement claim. Id.

## III.    STANDARD OF REVIEW

### A.  Review of a Report-Recommendation

Within fourteen days after a party has been served with a copy of a magistrate judge's

report-recommendation, the party "may serve and file specific, written objections to the

proposed findings and recommendations." Fed. R. Civ. P. 72(b); see also L.R. 72.1(c). A court

"shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). To qualify as a

specific objection, the objection must, "with particularity, identify [1] the portions of the

proposed findings, recommendations, or report to which it has an objection and [2] the basis for

the objection." See Garcia v. Duvall, No. 09-CV-884, 2012 WL 42270, at *1–2 (N.D.N.Y. Jan.

9, 2012) (internal quotation marks omitted).

If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere

reiteration of an argument made to the magistrate judge, a district court need review that aspect

of a report-recommendation only for clear error. See Barnes v. Prack, No. 11-CV-857,

2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); see also Demuth v. Cutting, No. 18-CV-

789, 2020 WL 950229, at *2 (N.D.N.Y. Feb. 27, 2020) (Kahn, J.). "A [district] judge . . . may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." § 636(b).

**B.  Summary Judgment**

For the portions of the Report-Recommendation that the Court reviews de novo, the Court will apply the same summary judgment standard as discussed in the Report-Recommendation. See R. & R. at 3–5. For convenience, the Court summarizes this standard here.

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (alteration in original).

To defeat a motion of summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(a). Sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion." Scott v. Coughlin, 344 F.3d 282, 289 (2d Cir. 2003). The credibility of such statements is better left to a trier of fact. Id.

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Furthermore, when a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and . . . interpret them to

6

raise the strongest arguments that they suggest." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir.

1994). Summary judgment is only appropriate "where the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith</u>

<u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV.   DISCUSSION

### A.  Statute of Limitations

No objections were filed to this portion of the Report-Recommendation. <u>See generally</u>

Objs. Consequently, the court reviews the Report-Recommendation for clear error and finds

none. Therefore, the Court adopts the Report-Recommendation finding that Plaintiff's claims are

timely and not barred by the statute of limitations. R. & R. at 8.

### B.  Plaintiff's Excessive Force and Failure to Protect Claims

No objections were filed to this portion of the Report-Recommendation. <u>See generally</u>

Objs. Consequently, the court reviews the Report-Recommendation for clear error and finds

none. Therefore, the Court adopts the Report-Recommendation finding that Plaintiff's Fourteenth

Amendment excessive force and failure to protect claims raise a genuine issue of material fact

and cannot be resolved on summary judgment. R. & R. at 11.

### C.  Plaintiff's Fourth Amendment Privacy Claims

Plaintiff objects to the dismissal of his Fourth Amendment privacy claims, asserting that

"the invasion [of privacy] was more direct th[a]n indirect" and that Burton and other female

inmates were very close to him while he was naked. Objs. at 2 (citing <u>Urbano v. Murphy</u>, 11-CV-

806, 2013 WL 6842939, at *3 (D. Conn. Dec. 23, 2013)). Plaintiff adds that whether "a prison

officer is searching for contraband is highly relevant to the inquiry . . . when analyzing an

7

inmates [sic] claim that prison officers infringed [his] 4th Amendment right to bodily privacy"
and that "in this case searching for contraband was not the justification" because Plaintiff "had
already been search[ed] for contraband prior to being placed in the holding cell." Objs. at 3.

Plaintiff's objection specifically identifies the portions of the Report-Recommendation to
which he has an objection and his basis for objection and does not reiterate arguments made in
his Second Amended Complaint. See Garcia, 2012 WL 42270, at *1–2. Thus, Plaintiff's
objection is a specific objection and the Court will review Plaintiff's Fourth Amendment privacy
claim de novo.

As the Report-Recommendation noted, "prisoners retain a right to bodily privacy, even if
that right is limited by institutional and security concerns." R. & R. at 15 (citing Nicholas v.
Goord, 430 F.3d 652, 658 (2d Cir. 2005)). "[W]hile all forced observations or inspections of the
naked body implicate a privacy concern, it is generally considered a greater invasion to have
one's naked body viewed by a member of the opposite sex." Harris v. Miller, 818 F.3d 49, 59 (2d
Cir. 2016) (citing Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1141 (9th Cir. 2011)
("[T]he desire to shield one's unclothed figure from [the] view of strangers, and particularly
strangers of the opposite sex, is impelled by elementary self-respect and personal dignity.")). For
this reason, "[c]ourts throughout the country have universally frowned upon cross-gender strip
searches in the absence of [ ] emergency or exigent circumstances." Harris, 818 F.3d at 59
(quoting Byrd, 629 F.3d at 1141). If an inmate's Fourth Amendment claim challenges an isolated
search, courts typically apply the standards set forth in Bell v. Wolfish in assessing the
reasonableness of the search by balancing the need for the particular search against the invasion
of personal rights, considering: (1) the scope of the particular intrusion; (2) the manner in which

the search was conducted; (3) the justification for initiating the search; and (4) the place the

search was conducted. Bell v. Wolfish, 441 U.S. 520, 559 (1979).

The Report-Recommendation did not consider the Bell factors when recommending the

dismissal of Plaintiff's right to privacy claims. Because the Court finds this test paramount in

evaluating these claims, the Court will apply each of the Bell factors to determine the

reasonableness of Plaintiff's search and then determine whether summary judgment is

appropriate.

### 1. The Scope of the Intrusion

The first Bell factor, the scope of intrusion, concerns the type of search performed and

whether the search involved an officer of the same gender as the inmate. See Harris, 818 F.3d at

58 ("A strip search . . . refers to an inspection of a naked individual without any scrutiny of the

subject's body cavities.") (internal quotation marks omitted). Here, the parties do not contest that

Plaintiff was strip searched. Pl.'s Mem. of Law at 2–3, 9–10; Mot. Ex. D at 4, 11. Furthermore,

Plaintiff's strip search involved Burton, who is a female. Id. Thus, the first Bell factor weighs

against finding Plaintiff's search reasonable.

### 2. The Manner in Which the Search was Conducted

The second Bell factor, the manner in which the search was conducted, looks at whether

the search was conducted in a reasonable manner. See Harris, 818 F.3d at 59–60 ("[a] strip

search conducted in a professional manner is more reasonable than [ ] one that is not."). As

Plaintiff notes, Bell states that "on occasion a security guard may conduct the search in an

abusive fashion . . . such abuse cannot be condoned." Objs. at 4 (quoting Bell, 441 U.S. at 560).

Plaintiff states that during his strip search he was thrown to the ground, Defendants applied pressure to his arms, legs, neck, and behind his ear, and Plaintiff was placed in "a strait jacket" leaving his genital area exposed. Pl.'s Mem. of Law at 3; Resp. to Statement of Material Facts at 4 ("Plaintiff was stripped naked and placed in an Emergency Response Belt (ERB) that bounded his upper torso and legs."). The forceful nature of Defendants' search on Plaintiff suggests that Plaintiff's search was not conducted in a reasonable manner. See e.g., Harris, 818 F.3d at 60 (citing Lee v. Downs, 641 F.2d 1117, 1120 (4th Cir. 1981) ("[I]t was wholly unnecessary for the male guards to remain in the room and to restrain the plaintiff while her underclothing was forcefully removed.")).

### 3. The Justification for Initiating the Search

Defendants contend that their actions were necessary to address a suicide attempt, but Plaintiff contests this. R. & R. at 15. Since Defendants do not offer any other justification, there is a genuine dispute of material fact as to whether this strip search was justified.

### 4. The Place in Which the Search was Conducted

For the last Bell factor, courts have arrived at different conclusions regarding what makes the place in which the search was conducted more or less reasonable. See Harris, 818 F.3d at 62 ("Some courts have found that searches conducted in the presence of other inmates are more reasonable because there is a reduced chance of abuse . . . [o]ther courts have found that searches conducted outside the presence of other inmates are more reasonable."). This Circuit has found that searches conducted outside the presence of other inmates are more reasonable. Id. (stating that a strip search conducted in the presence of unnecessary spectators is less reasonable than one conducted in the presence of only those individuals needed to conduct the search.). The search

10

and the movement of Plaintiff's naked body occurred in the presence of other inmates. See Objs. at 3; Mot. Ex. B. Thus, this factor also weighs against finding Plaintiff's search reasonable.

Being stripped by an officer of the opposite gender without justification and moved while naked in close proximity to guards and other inmates of the opposite sex may rise to a Fourth Amendment violation of Plaintiff's right to bodily privacy. See e.g., Harris, 818 F.3d at 62–63 ("[I]f the inmate challenges an isolated search as infringing on his or her right of bodily privacy, courts should assess the claimed violation for reasonableness under the Bell factors . . . . We further note that cross-gender strip searches of inmates conducted in the absence of an emergency or other exigent circumstances are generally frowned upon.") (internal quotation marks omitted). Here, because none of the Bell factors seem to weigh in favor of Defendants, the Court determines that a reasonable jury could find for Plaintiff and thus denies Defendants' motion for summary judgment as to Plaintiff's right to privacy claims.

### D.  Plaintiff's Fourteenth Amendment Conditions of Confinement Claims

Plaintiff objects to the portion of the Report-Recommendation granting Defendants' motion for summary judgment as to his Fourteenth Amendment conditions of confinement claim against Andrew, and argues that Andrew knew or should have known of the deplorable conditions in Cell 10 of Pod 5C. Objs. at 6. Plaintiff states that other staff knew and expressed concern about these conditions, specifically Erin Moore and "Toni." Pl.'s Mem. of Law at 4, 19; Objs. at 8.

Plaintiff also objects to the grant of summary judgment on his Fourteenth Amendment conditions of confinement claims against Burton, Sarno, and Phillips, asserting that his exposure to extremely hot temperatures in Cell 42 lasted for days and that under Ortiz v. Dep't of Corr. of

City of New York, three days of exposure is sufficient to constitute a constitutional violation. Objs. at 5 (citing Ortiz, No. 08-CV-2195, 2011 WL 2638137, at *7 (S.D.N.Y. Apr. 29, 2011)).

Plaintiff's objections specifically identify the portions of the Report-Recommendation to which he has an objection and his basis for objecting. Plaintiff does not just reiterate arguments made in his Second Amended Complaint. See Garcia, 2012 WL 42270, at *1–2. Thus, Plaintiff's objection is a specific objection and his Fourteenth Amendment conditions of confinement claims will be reviewed de novo.

A pretrial detainee's claim of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

> A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions. This means that a pretrial detainee must satisfy two prongs to prove a claim, an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a "subjective prong"—perhaps better classified as a "mens rea prong" or "mental element prong"—showing that the officer acted with at least deliberate indifference to the challenged conditions.

Pittman v. Billings, No. 20-CV-422, 2020 WL 2079440, at *5 (N.D.N.Y. Apr. 30, 2020) (internal citations omitted). The subjective prong can be defined either subjectively, i.e., what a person knew and disregarded, or objectively, i.e., what a reasonable person would have known and would not have disregarded. Id.

*1. Pod 5C, Cell 10*

As the Report-Recommendation noted, Plaintiff states that Andrew moved him to Cell 10 in Pod 5C, which had "feces, vomit, spoiled food, fruit flies[, ] and blood on the walls and floor." R. & R. at 12 (quoting Sec. Am. Compl. at 8). Andrew's affidavit denies observing any of the conditions observed by Plaintiff. Mot. Ex. G.

For the objective prong, in <u>Darnell</u>, the Second Circuit found a material dispute of fact with respect to the objective prong of a conditions of confinement claim based on the plaintiffs' contention that they were housed in cells with urine, vomit, and feces present in 10- to 24-hour increments. <u>Darnell</u>, 849 F.3d at 24. Because the conditions in this cell are similar, and Plaintiff was there for at least 72 hours, there is a genuine dispute of material fact as to whether Plaintiff satisfies the objective prong of an unconstitutional condition of confinement.

For the subjective prong of an unconstitutional condition of confinement, the Report-Recommendation noted Andrew's denial of personally observing the conditions in which Plaintiff was confined. R. & R. at 12–13. However, this does not establish whether Andrew should have known that Plaintiff was confined in a cell with feces, vomit, and other filth. <u>Darnell</u>, 849 F.3d at 35 (stating that the subjective prong is satisfied when a reasonable defendant-official would have known of objective conditions and acted to mitigate the risk they posed to a pretrial detainee). Plaintiff claims that Andrew personally placed him in Cell 10 and that Plaintiff complained about the cell's condition through the cell door slot and later to mental health workers. Pl.'s Mem. of Law at 3–4, 19; Objs. at 7–8; Dkt. No. 62-1 at 8. Because the subjective prong does not require actual knowledge from Andrew, there is a genuine dispute of material fact as to whether Andrew should have known of the conditions in Cell 10 and thus as to

whether Plaintiff satisfies the subjective prong of a Fourteenth Amendment conditions-of-confinement claim.

Since Plaintiff's claim against Andrew raises a genuine dispute of material fact for both the objective and subjective prong for an unconstitutional condition of confinement, summary judgment should be denied as to this claim.

### 2. Pod 5C, Cell 42

Plaintiff also alleges that he was subjected to extreme heat, in excess of 90 degrees, when he was moved to a new cell for three days. Pl.'s Mem. of Law at 4, 19–20. Burton, Sarno, and Phillips had knowledge of this condition and failed to remedy it. Id. As the Report-Recommendation notes, Defendants offer no evidence refuting Plaintiff's allegations that the temperature in his cell exceeded 90 degrees. See R. & R. at 14.

Numerous courts, including those in the Second Circuit, have found that excessive hot or cold conditions may be unconstitutional. See Wingate v. Robert N. Davoren Center, No. 12-CV-5521, 2013 WL 4856573, at *3 (S.D.N.Y. Sept. 10, 2013). However, district courts in this Circuit have also found "allegations of exposure to extreme temperatures for short periods of time are insufficient to state an Eighth or Fourteenth Amendment claim." Id.

The Report-Recommendation concluded that three days' exposure to a condition was insufficient to state a conditions of confinement claim. See R. & R. at 14–15. However, the Report-Recommendation failed to consider the severity of conditions during the three day period in recommending dismissal for the conditions of confinement claim.

The conditions of Plaintiff's cell are nearly analogous to the conditions in Wingate, where the plaintiff was exposed to "90 plus degree" temperatures for seven days straight and the court

found that this objectively posed a serious health risk. See Wingate, 2013 WL 4856573, at *3–4. Here, although Plaintiff was exposed to this extreme heat for less than half the time as in Wingate, the Wingate court noted that even being in these conditions for a few hours with poor ventilation could pose a grave risk to the occupant's health. Id. Plaintiff notes this when he says he "thought [he] was gonna die in the cell those days." Objs. at 5. Thus, there is a genuine dispute of material fact determinative of the objective prong of a conditions-of-confinement claim. Because Defendants do not dispute their subjective knowledge of these conditions, they have not carried their initial burden on summary judgment of establishing that no material questions of fact exist. See R. & R. at 13 (citing Callwood v. City of Kingston, No. 15-CV-1298, 2020 WL 2838602, at *6 (N.D.N.Y. June 1, 2020)).

For these reasons, the Court finds that summary judgment should be denied as to Plaintiff's Fourteenth Amendment conditions of confinement claims arising out of the time he spent in Cell 42.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 70) is **APPROVED and ADOPTED** to the extent it recommends denial of Defendants' Motion for Summary Judgment (Dkt. No. 50) for Plaintiff's Fourteenth Amendment excessive force and failure to protect claims and Plaintiff's Fourteenth Amendment conditions of confinement claim against Williams and **REJECTED** to the extent it recommends that Defendants' Motion for Summary Judgment be granted as to Plaintiff's Fourth Amendment invasion of privacy claims and Plaintiff's other Fourteenth Amendment conditions of confinement claims; and it is further

15

**ORDERED**, that Defendants' Motion for Summary Judgment be **DENIED in its entirety**; and it is further

**ORDERED**, that the clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      October 01, 2020
               Albany, New York


Lawrence E. Kahn
U.S. District Judge

16